UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NORMAN D. CHERRY,

                                DECISION AND ORDER

                     Petitioner,

                                18-CV-6493L

           v.

PEOPLE OF THE STATE OF NEW YORK,

                   Respondent.
_____

## INTRODUCTION

Petitioner Norman D. Cherry ("Cherry") has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. # 1), challenging a judgment from the County Court of Chemung County, convicting him, following a jury verdict, of criminal possession of a weapon in the second degree (N.Y. Penal Law § 265.03(3)). Cherry is currently serving a sentence of 12 years imprisonment, with five years of post-release supervision, after being adjudicated a second felony offender. Respondent filed a response to Cherry's petition along with relevant portions of the state court record. (*See* Dkt. # 12). For the following reasons, Cherry's petition is denied.

## BACKGROUND

I. **Relevant Factual Background**[1]

On the morning of April 9, 2013, several officers with the Elmira Police Department, as well as investigators and troopers with the New York State Police, executed a no-knock search warrant at 711 Davis Street, Elmira, New York ("711 Davis Street"). The search warrant, granted on April 8, 2013 based on the application of New York State Police Investigator Matthew Lambert ("Investigator Lambert"), authorized the search of the first floor (of two floors) at 711 Davis Street, as well as of an individual named Miejylous T. Deese ("Deese"). Investigator Lambert's search warrant application detailed a confidential informant's several controlled buys of crack cocaine from Deese at 711 Davis Street that Investigator Lambert oversaw.

Upon execution of the search warrant, officers entered the first floor of 711 Davis Street through different portions of the apartment. Certain officers entered through the front door of the apartment, and eventually discovered Deese hiding in the bathroom. Other officers breached and entered 711 Davis through a window to the main bedroom. After breaching the window, officers initially observed a male – eventually identified as Cherry – lying on the right side of the bed next to a female. Both Cherry and the female rolled off the bed as officers entered the room.

When the officers secured the premises, Investigator Lambert searched the main bedroom and discovered a loaded .22 revolver under a pillow on the side of the bed where Cherry had been observed lying. In addition, New York State Trooper Jeffrey Gotschall, upon searching the kitchen of 711 Davis Street, identified mail that was directed to Cherry, as well as receipts suggesting that

---

[1] The following factual background derives from the state court record and trial transcript submitted by respondent. (*See* Dkt. # 12-2 (state court record); Dkt. # 12-3 (trial transcript)). Further factual background specific to each of Cherry's claims is provided, where appropriate, in the below discussion of those claims.

Cherry was paying rent to live at 711 Davis Street.  Investigator Lambert had also observed that Cherry's name was one of the names on the mailbox for the apartment.

This search resulted in Cherry's arrest and charge by indictment of a Chemung County Grand Jury for one count of criminal possession of a weapon in the second degree on April 11, 2013, a violation of New York Penal Law § 265.03(3).  (Dkt. # 12-2 at 61).

At trial, which commenced on March 24, 2014, the prosecution offered eleven witnesses who detailed the execution of the search warrant, as well as the ensuing investigation of the evidence discovered.  In relevant part, the prosecution offered the testimony of Elmira City Police Sergeant Scott Packard ("Sergeant Packard"), who was assigned to oversee the collection of evidence from 711 Davis Street on April 9, 2013.  Sergeant Packard testified, among other things, that on April 10, 2013, he examined the .22 revolver found in the main bedroom at 711 Davis Street for fingerprints and processed the firearm for DNA evidence.  Although he did not identify any useable fingerprints, he eventually sent DNA swabs containing potential DNA evidence to the Forensic Investigations Center in Albany, New York, in May 2013.  In addition, in October 2013, pursuant to a court order, Sergeant Packard obtained DNA samples from the inside of Cherry's cheeks to use for comparison against other evidence found in the case.  Sergeant Packard then forwarded Cherry's "buccal sample" to the Forensic Investigations Center.

The prosecution also presented the testimony of forensic analyst Kurt Sickinger ("Sickinger"), who works at the Forensic Investigations Center and who performed the DNA analysis in this case.  Ultimately, Sickinger concluded that DNA evidence from the .22 revolver was consistent with at least three other donors, at least one of which was male, and he could not exclude Cherry as a contributor of the DNA evidence discovered on the firearm.

Following the close of proof by the prosecution, Cherry's counsel moved for a trial order of dismissal pursuant to New York Criminal Procedure Law § 290.10, on the grounds that the evidence was legally insufficient to establish the charged offense. (Dkt. # 12-3 at 293). The trial court denied the motion. (*Id.* at 294).

Cherry then chose to present evidence in his defense, which consisted of his own testimony, as well as the testimony of Deese. In relevant part, while Cherry admitted that he lived at 711 Davis Street, both witnesses denied that the .22 revolver belonged to Cherry or that he had ever possessed the firearm.

After the close of proof, the trial court held a formal charge conference, at which the prosecution requested a charge for "constructive possession." (*Id.* at 354). After discussion with Cherry off the record, Cherry's counsel did not object to this charge, which the trial court ultimately gave to the jury during jury instructions. (*Id.* at 354, 400-401).

Following deliberations, the jury returned a verdict of guilty. (*Id.* at 413). Cherry was sentenced on April 28, 2014 as a second felony offender to 12 years imprisonment, with five years of post-release supervision. (*Id.* at 418-26).

## II.    Direct Appeal

On appeal, the Appellate Division, Third Department, affirmed, *see People v. Cherry*, 149 A.D.3d 1346 (3d Dep't 2017), relevant portions of which are discussed below. The New York Court of Appeals denied leave to appeal. *See People v. Cherry*, 29 N.Y.3d 1124 (N.Y. 2017).

## III.    Cherry's Habeas Petition

Cherry filed the pending habeas petition on June 20, 2018, in which he raises several grounds for relief. (Dkt. # 1). Specifically, Cherry contends that: (1) the evidence at trial was legally insufficient to support his conviction for constructive possession of a weapon; (2) the

4

search warrant was not sufficiently particular with respect to the description of the place to be searched; (3) the prosecutor's cross-examination of Cherry at trial regarding his prior bad acts denied him due process and a fair trial; (4) he was denied a fair trial because the trial court improperly admitted evidence of his prior convictions; and (5) the prosecutor's summation contained comments that denied Cherry due process and a fair trial. (*Id.* at 5-7). Each of these grounds for relief will be addressed *seriatim*.

## DISCUSSION

### I.   Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim has been adjudicated on the merits in state court, federal habeas corpus relief is available only if the state court proceeding: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

### II.   Analysis

#### A.   Cherry's Legal Insufficiency Claim Is Procedurally Barred and Lacks Merit (Ground One)

Cherry first contends that the evidence at trial was legally insufficient to support his conviction because there was "no proof that [he] ever had actual possession of the .22 caliber revolver." (Dkt. # 1 at 5). Respondent argues that this contention is procedurally barred by an independent and adequate state-law ground, and that, in any event, the Appellate Division's rejection of this claim on the merits was "not contrary to, nor an [un]reasonable application of, clearly established Supreme Court law." (Dkt. # 12-1 at 12-13). I agree with respondents.

"It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment,'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)), unless the petitioner demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claims will result in a fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750. A state-law ground is "independent" when "the last state court to consider the claim rendering a judgment in the case clearly and expressly rested its judgment on a state procedural bar." *Perez v. Lempke*, 2011 WL 2746785, *2 (W.D.N.Y. July 13, 2011). Moreover, a state-law ground is "adequate" if it is "based on a rule that is firmly established and regularly followed by the state in question." *Id.* (quotations omitted).

The relevant portions of the trial transcript reveal that at the close of respondent's proof, Cherry moved pursuant to New York Criminal Procedure Law § 290.10 for a trial order of dismissal of the offense charged based on legal insufficiency grounds. (Dkt. # 12-3 at 293). The trial court denied his motion. (*Id.* at 294). Cherry proceeded to offer proof in support of his defense. At the close of all proof, Cherry did not renew his motion for a trial order of dismissal.

On direct appeal, the Appellate Division explicitly held that Cherry's legal sufficiency claim was "unpreserved for . . . review." *Cherry*, 149 A.D.3d at 1346-47. In support of this holding, the Appellate Division cited authority standing for the proposition that a petitioner's challenge to the legal sufficiency of the trial evidence "is unpreserved for [appellate] review" where the petitioner "presented evidence [at trial] after his unsuccessful motion to dismiss *and failed to renew* that motion at the close of all proof." *People v. Peterkin*, 135 A.D.3d 1192, 1192 (3d Dep't 2016) (emphasis supplied) (cited by *Cherry*, 149 A.D.3d at 1347). Indeed, this

6

proposition is well-established and regularly followed in New York. *See, e.g.*, *People v. Lane*, 7 N.Y.3d 888, 889 (N.Y. 2006) (finding defendant failed to preserve his challenge to the legal sufficiency of the evidence where, after presenting proof in support of his defense, defendant "did not renew his earlier argument" to dismiss the charged offense; "[c]onsequently, whether the trial evidence was sufficient to support each element of the crime is not a question of law that this [c]ourt may review"); *see also Montgomery v. Wood*, 727 F. Supp. 2d 171, 180 (W.D.N.Y. 2010) ("a defendant's introduction of proof in his behalf at trial renders futile an earlier-made motion for dismissal based on insufficiency of the prosecution's evidence").

Accordingly, the Appellate Division's holding constitutes an independent and adequate state-law ground sufficient to preclude federal habeas review of Cherry's legal insufficiency claim, and Cherry has not made the necessary showing to overcome this procedural bar.

In any event, the claim lacks merit. "The standard for assessing the sufficiency of the evidence to support a guilty verdict is well settled, and it is the same under both Federal and New York state law: The reviewing court is limited to asking whether 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Klosin v. Conway*, 501 F. Supp. 2d 429, 440 (W.D.N.Y. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In making this evaluation, "this [c]ourt must defer to the jury's assessment of credibility." *Cruz v. Giambruno*, 2009 WL 2928956, *4 (W.D.N.Y. 2009). A habeas petitioner "bears a very heavy burden in convincing a federal *habeas* court to grant a petition on the grounds of insufficiency of the evidence." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000).

Pursuant to New York Penal Law § 265.03(3), a person is guilty of criminal possession of a weapon in the second degree when "such person possesses any loaded firearm." N.Y. PENAL

LAW § 265.03(3).[2]  As the Appellate Division noted, the possession element of this offense can be proved by demonstrating "constructive possession," that is, "where there is evidence – either direct or circumstantial – that the defendant exercised dominion or control over the weapon or the area in which it was found," which "may be found even though others have access to the contraband or the area where it is located."  *Cherry*, 149 A.D.3d at 1347 (alterations and quotations omitted) (collecting cases); *see also* N.Y. PENAL LAW § 10.00(8) (defining "possess" as "hav[ing] physical possession or otherwise exercis[ing] dominion or control over tangible property").

Viewing the evidence in a light most favorable to the prosecution, I am satisfied that a rational trier of fact could have found the essential elements of criminal possession of a weapon in the second degree beyond a reasonable doubt.  The evidence at trial established that officers executing the search warrant at 711 Davis Street initially observed Cherry lying on the right side of the bed next to a female in the main bedroom.  In addition, during his search of that bedroom, Investigator Lambert discovered the loaded .22 revolver at issue underneath the pillow on the same side of the bed where Cherry had been lying.  Moreover, forensic analyst Sickinger testified that Cherry's DNA could not be excluded as a contributor to the mixture profile of DNA found on that revolver.  Cherry also admitted that he lived at 711 Davis Street during his testimony.

In short, considering Cherry's proximity to the loaded forearm at issue, the DNA evidence, as well as the deference owed to the jury's credibility assessments, Cherry has not satisfied his "very heavy burden" of showing that the trial evidence was legally insufficient to support his conviction.  The Appellate Division's decision on the merits of this claim was thus neither contrary to, nor an unreasonable application of, federal law, nor was it unreasonable in light of the evidence presented to the state trial court.  Accordingly, his petition is denied on this ground.

---

[2]  While there are certain exceptions to this offense, none are applicable here because Cherry had been previously convicted of a crime.  *See* N.Y. PENAL LAW §§ 265.02(1), 265.03(3); *see also* Dkt # 12-1 at 15 n.6.

**B.**     <u>**Cherry's Fourth Amendment Claim Is Not Cognizable**</u> **(Ground Two)**

Cherry also contends that the underlying search warrant in this case was invalid because it "failed to meet the Constitutional requirement of particularity with respect to the description of the place to be searched." (Dkt. # 1 at 5). Respondent contends that such a Fourth Amendment claim is not cognizable on federal habeas review. (Dkt. # 12-1 at 17-19). I agree with respondent.

It is well established that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 481 (1976). Federal habeas review of a Fourth Amendment claim is unavailable, therefore, unless the state has either failed to provide "corrective procedures . . . to redress the alleged fourth amendment violations," or has provided a corrective procedure, but the petitioner was "precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). "Consequently, once it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief." *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002).

Critically, the Second Circuit "has found that New York law permitting a criminal defendant to file a pretrial motion to suppress evidence unlawfully seized provides a sufficient corrective procedure to redress potential violations of a petitioner's Fourth Amendment rights." *Small v. Artus*, 2009 WL 2707319, *13 (E.D.N.Y. 2009) (citing *Capellan*, 975 F.2d at 70 n.1).

Here, Cherry had an opportunity to fully and fairly litigate his Fourth Amendment claim and, in fact, took advantage of that opportunity. Prior to trial, Cherry filed a counseled motion to suppress the evidence discovered as a result of the search of his residence, pursuant to New York Criminal Procedure Law Section 170.20. (*See* Dkt. # 12-2 at 158-162, 167-68). The trial court denied Cherry's motion after a hearing. (*See id.* at 219-20). The Appellate Division affirmed that decision on the merits. *See Cherry*, 149 A.D.3d at 1347-48. Cherry thus cannot show that he lacked a corrective procedure to address his Fourth Amendment claim, and he has not demonstrated or even suggested an unconscionable breakdown of that underlying process.

Accordingly, his contention that the search warrant was invalid is not cognizable on federal habeas review. This claim is, therefore, dismissed.

### C. **Cherry's Claim Regarding His Uncharged Prior Bad Acts Is Procedurally Barred and Lacks Merit (Ground Three)**

Cherry's next contention is that the trial court erroneously permitted the prosecution to cross-examine him regarding prior "uncharged bad acts and crimes," which denied him due process and a fair trial, particularly where such evidence was used by the prosecution in summation. (Dkt. # 1 at 6). Cherry does not elucidate which prior acts his claim relies upon, but both the Appellate Division and respondent discuss this claim in relation to Cherry's prior gang affiliation. Respondent maintains that this claim is unexhausted, is procedurally barred by an independent and adequate state-law ground, and lacks merit. (Dkt. # 12-1 at 20, 23). I agree with respondent that this claim is procedurally barred and, in any event, lacks merits, and therefore do not reach respondent's exhaustion argument.

Initially, by explicitly holding that Cherry failed to preserve this claim for appellate review, *see Cherry*, 149 A.D.3d 1348, the Appellate Division rested its judgment on an independent and adequate state-law ground.

New York's "preservation rule . . . requires defense counsel to lodge a contemporaneous and specific objection to any alleged legal error in order to preserve the issue for appellate review." *Ali v. Unger*, 2014 WL 257270, *4 (W.D.N.Y. 2014) (citing N.Y. CRIM. PROC. LAW § 470.05(2)). "Codified at [N.Y. Criminal Procedure Law] § 470.05(2), the contemporaneous objection rule require[s], at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error." *Id.* Moreover, the Second Circuit has "held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule." *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011), *cert. denied*, 566 U.S. 1014 (2012).

The trial transcript demonstrates that Cherry's trial counsel objected twice during the prosecution's cross-examination of Cherry regarding his affiliation with a group identified as the Immortal Retribution Gang ("IRG"). (*See* Dkt. # 12-3 at 336-40). Counsel's objections related to a question about the location of a certain member of IRG, and the admission into evidence of a picture supposedly depicting certain members of IRG. (*See id.* at 338-40). In other words, counsel did not object to the prosecution's overall line of questioning regarding Cherry's affiliation with IRG, which seems to be the basis of Cherry's current claim.

Therefore, in the absence of a "contemporaneous and specific objection" at trial by Cherry regarding the prosecution's line of questioning into his affiliation with IRG, the Appellate Division's ruling constitutes an independent and adequate state-law ground sufficient to preclude federal habeas review of Cherry's claim, and Cherry has not made the necessary showing to overcome this procedural bar. *See, e.g.*, *Griggs v. Phillips*, 2009 WL 2983030, *11 (E.D.N.Y. 2009) (holding that a claim that certain trial testimony was improper was not preserved for

11

appellate review where petitioner "failed to object to the line of questioning he now claims is improper"), *aff'd*, 401 Fed. Appx. 590 (2d Cir. 2010), *cert. denied*, 562 U.S. 1298 (2011).

Moreover, and in any event, the claim lacks merit. As the Appellate Division rightly noted, "it was [Cherry], and not the People, who first raised the issue" of Cherry's affiliation with IRG. *Cherry*, 149 A.D.3d at 1348. Indeed, on direct examination, Cherry's counsel first broached the topic. (*See* Dkt. # 12-3 at 333-34). The prosecution was thus plainly permitted to question Cherry about his involvement with IRG on cross-examination. The Appellate Division's decision on the merits of this claim was thus neither contrary to, nor an unreasonable application of, federal law, nor was it unreasonable in light of the evidence presented to the state trial court.

Simply put, Cherry has not raised a constitutional due process issue with regard to this line of questioning, and Cherry's claim for habeas relief on this issue is accordingly denied.

### D. <u>Cherry Is Not Entitled to Habeas Relief on His *Sandoval* Claim</u> (Ground Four)

Cherry also contends that the trial court's pretrial *Sandoval* ruling – relating to the admission of Cherry's prior criminal convictions – was erroneous and denied him a fair trial. (Dkt. # 1 at 6). Respondent maintains that this claim is unexhausted, and, in any event, lacks merit. (Dkt. # 12-1 at 19-24). I agree with respondent that Cherry's *Sandoval* claim clearly lacks merit, and therefore do not reach the exhaustion argument.

"[A] claim that the trial court erred in its *Sandoval* ruling brings up a matter of state law and not subject to habeas review unless the petitioner can show that the erroneous evidentiary ruling was so pervasive as to have denied him a fundamentally fair trial, or so extremely unfair that its admission violates fundamental conceptions of justice." *Lewis v. New York*, 2017 WL 5591624, *8 (E.D.N.Y. 2017) (quotations omitted). To establish a constitutional violation, a petitioner must demonstrate: "(1) the evidence was in fact admitted erroneously; and (2) the

erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Chatmon v. Mance*, 2010 WL 7768902, *3 (S.D.N.Y. 2010) (quotations omitted), *report and recommendation adopted*, 2011 WL 5023243 (S.D.N.Y. 2011). "In sum, the erroneously admitted evidence must have been crucial, critical, [and] highly significant." *Id.* (quotations omitted).

In New York, a defendant who chooses to testify at his trial may be cross-examined about his prior criminal acts to the extent that they might relate to his credibility. *See People v. Sandoval*, 34 N.Y.2d 371 (N.Y. 1974). Accordingly, "defense counsel can move for a pretrial hearing concerning the prosecution's use of [d]efendant's prior convictions to impeach his credibility." *Nieves-Delgado v. New York*, 2003 WL 21310815, *1 n.1 (S.D.N.Y. 2003). "To comply with *People v. Sandoval*, a trial court must make a pre-trial determination regarding which of a defendant's prior convictions and/or bad acts a prosecutor may inquire into should that defendant testify." *Lewis*, 2017 WL 5591624 at *7.

In accordance with this directive, prior to the introduction of proof at trial, the state trial court conducted a *Sandoval* hearing. During that hearing, the prosecution indicated its desire to question Cherry, in the event he chose to testify, about six of his prior convictions. (Dkt. # 12-3 at 104-05). In response, Cherry's counsel requested that the trial court "engage in the *Sandoval* compromise," which the court ultimately did. (*Id.* at 106-09). Specifically, the trial court only permitted the prosecution to cross-examine Cherry regarding his August 1, 2011 conviction for criminal possession of a controlled substance in the seventh degree, his February 28, 2000 conviction for attempted criminal sale of a controlled substance in the third degree, and his December 3, 1998 conviction for assault in the second degree (and denied any cross-examination

13

regarding Cherry's several other prior convictions).  (*Id.* at 108).  The trial court limited cross-examination about these convictions to only "the name of the actual statute of conviction." (*Id.*).

In the trial court's view, this *Sandoval* compromise struck the appropriate balance between permitting the jury to learn information that might assist it assess Cherry's credibility, and the danger of giving the jury too much information that might lead it to draw an improper conclusion. (*Id.* at 107).  Cherry objected to the trial court's *Sandoval* ruling.  (*Id.* at 113).

Cherry ultimately chose to testify at his trial.  At the beginning of direct examination by his counsel, Cherry admitted to being previously convicted of the crimes specified in the trial court's *Sandoval* ruling.  (*Id.* at 328).  The prosecution did not ask Cherry any questions about these convictions on cross-examination.  (*See id.* at 335-349).  During summation, the prosecution referenced Cherry's prior convictions permitted by the trial court's *Sandoval* ruling, but only in relation to the jury's assessment of Cherry's credibility as a witness.  (*See id.* at 380).  Moreover, in its charge to the jury, the trial court specifically stated and "emphasize[d]" that "under no circumstances [was the jury] to consider the fact that the defendant has previously been convicted of crimes as any proof that he committed the crime charged in this case," but that the jury "may . . . consider the fact of the defendant's prior convictions for the purpose of assisting [it] in evaluating [Cherry's] credibility."  (*Id.* at 394).

The Appellate Division rejected Cherry's *Sandoval* claim on its merits, holding that the trial court's *Sandoval* compromise was not an abuse its discretion "as the three of six convictions that the People were allowed to inquire about were neither too remote in time nor similar to the charged crimes and were probative of defendant's credibility and willingness to put his interests above those of society."  *Cherry*, 149 A.D.3d at 1348 (quotations omitted).

14

The above discussion demonstrates that not only was the trial court's *Sandoval* ruling proper, but that in any event, it did not amount to a constitutional violation. Nothing about the use of Cherry's three prior convictions at trial impermissibly prejudiced him or interfered with his right to a fair trial. That evidence was used exclusively in the context of assessing Cherry's credibility as a witness, which the trial court emphasized during its charge to the jury. Moreover, this evidence was not sufficiently material to Cherry's conviction; as explained above, the evidence supporting Cherry's conviction was legally sufficient even without mention of Cherry's prior convictions.

Thus, Cherry has not demonstrated the trial court's *Sandoval* ruling was "so pervasive" to deny him a fair trial or violate "fundamental conceptions of justice." *Lewis*, 2017 WL 5591624 at *8. Federal habeas relief on this claim is therefore denied.

### E.     Cherry's Claim Regarding the Prosecutor's Remarks During Summation Is Procedurally Barred and Lacks Merit (Ground Five)

Cherry's final claim is that the prosecutor made improper comments during summation that denied Cherry a fair trial and due process. (Dkt. # 1 at 7). Specifically, Cherry takes exception to the prosecutor repeatedly arguing to the jury that defense witness Deese lied during his testimony. (*Id.*). The Appellate Division considered this claim and held that it was "unpreserved" for review. *Cherry*, 149 A.D.3d at 1348. Moreover, the Appellate Division stated that while it "agree[d] that the remarks at issue were improper, viewing the summation as a whole, the prosecutor did not engage in a pervasive and flagrant pattern of misconduct so as to deprive defendant of a fair trial." *Id.* (alterations and quotation omitted).

Respondent maintains that Cherry's claim is barred by an independent and adequate state-law ground, and that it is without merit. (Dkt. # 12-1 at 24-25). I agree on both points.

Initially, a review of the trial transcript demonstrates that Cherry's trial counsel did not object at all during the prosecutor's summation. (*See* Dkt. 12-3 at 375-90). In the absence of a "contemporaneous and specific objection" to the prosecutor's supposedly improper remarks during summation, *see Ali*, 2014 WL 257270 at *4, the Appellate Division's reliance on New York's preservation rule in denying review constitutes an independent and adequate state-law ground to support its judgment, and Cherry has not demonstrated a reason for this Court to reach the merits of this claim. Thus, Cherry's claim is dismissed on this basis. *See, e.g.*, *Perez*, 2011 WL 2746785 at *6 ("Courts in this circuit have consistently held that a state court's reliance on defendant's failure to object contemporaneously to a prosecutor's allegedly improper summation constitutes an adequate and independent state ground for deciding the claim.").

In any event, this claim lacks merit. The standard of review for a habeas claim of prosecutorial misconduct is whether the prosecutor engaged in "egregious misconduct . . . amount[ing] to a denial of constitutional due process." *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir. 1990) (citation omitted). To succeed, the petitioner must show that "the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair." *Id.* (citation omitted). Importantly, "[t]he court considers the record as a whole when making this determination, because even a prosecutor's inappropriate or erroneous comments or conduct may not be sufficient to undermine the fairness of the proceedings when viewed in context." *Mesko v. Lilley*, 2019 WL 6493976, *9 (N.D.N.Y. 2019) (quotations omitted).

When viewed in light of the record as a whole, Cherry cannot demonstrate that the prosecutor's summation rendered the trial fundamentally unfair. True, the prosecutor stated several times in summation that Deese lied when he testified that 711 Davis Street was his apartment and not Cherry's. (*See, e.g.*, Dkt. # 12-3 at 377-82). Yet the prosecutor's remarks seem

16

at least reasonably supported by the record. In fact, Cherry himself admitted that he was a resident of 711 Davis Street (*see id.* at 328), and that Deese was lying when he testified that 711 Davis Street was his apartment (*see id.* at 335-36). Moreover, other evidence discovered during the search of 711 Davis Street contradicted Deese's testimony that the apartment was his; mail in the apartment was addressed to Cherry, there were rent receipts suggesting that Cherry was paying rent to live at the apartment, and Cherry's name was on the mailbox. (*See id.* at 169-70, 203-06).

In light of the overwhelming evidence contradicting Deese's testimony, Cherry cannot demonstrate that the prosecutor's summation remarks caused him substantial prejudice amounting to a constitutional deprivation of due process, nor that the remarks rendered the trial as a whole fundamentally unfair. Thus, The Appellate Division's decision on the merits of this claim was neither contrary to, nor an unreasonable application of, federal law, nor was it unreasonable in light of the evidence presented to the state trial court. This claim is therefore dismissed.

## CONCLUSION

For all the reasons stated above, there is no basis to grant Cherry's petition for habeas corpus relief, pursuant to 28 U.S.C. § 2254, in this case. Therefore, the petition for a writ of habeas corpus (Dkt. # 1), is **DENIED**.

The Court also denies issuance of a certificate of appealability because Cherry has failed to make a substantial showing of the denial of any constitutional right.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
February 24, 2021.